# EXHIBIT 1

COPY

**BY FAX**

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

*FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

LEHMAN BROTHERS BANK, FSB, a national banking institution;
Additional Parties Attachment Form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*

DORI CIOCIOLO, an individual

ENDORSED
FILED

JUL 22 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Sonoma County Superior Court

600 Administration Drive, Santa Rosa, CA 95403

Hall Of Justice

| CASE NUMBER:
(Número del Caso): | 254005 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Tala Rezai, Real Estate Law Center, 695 S. Vermont Ave., L.A., CA 90005    Tel: 213-201-6353

| DATE: **JUL 22 2013** | JOSE O. GUILLEN | Clerk, by **JENNIFER ELLIS** | , Deputy |
| *(Fecha)* | | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **AURORA LOAN SERVICES LLC, a business entity**

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP 415.95 Business Organization, Form Unknown
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 417.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| DORI CIOCIOLO v. LEHMAN BROTHERS BANK, FSB, et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

AURORA LOAN SERVICES LLC, a business entity; NATIONSTAR MORTGAGE LLC, a business entity; OLD REPUBLIC DEFAULT MANAGEMENT SERVICES, a business entity; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a business entity; and DOES 1 through 10 inclusive,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number, and address): | FOR COURT USE ONLY |
|---|---|
| Chad T-W Pratt, Sr. Esq. (SBN 149746)   Tala Rezai (SBN 271949)<br>REAL ESTATE LAW CENTER, PC<br>695 South Vermont Avenue, Suite 1100<br>Los Angeles, CA 90005<br>TELEPHONE NO: 213-201-6353   FAX NO: 213-281-9627<br>ATTORNEY FOR (Name): Plaintiff DORI CIOCIOLO | ENDORSED<br>FILED<br>JUL 22 2013<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma
STREET ADDRESS: 600 Administration Drive
MAILING ADDRESS: 600 Administration Drive
CITY AND ZIP CODE: Santa Rosa, CA 95403
BRANCH NAME: Hall Of Justice

CASE NAME:
DORI CIOCIOLO v. LEHMAN BROTHERS BANK, FSB, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 254005<br>JUDGE: ELLIOT LEE DAUM<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Construction defect (10) |
| | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | Real Property | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse condemnation (14) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Wrongful eviction (33) | |
| Non-PI/PD/WD (Other) Tort | ☑ Other real property (26) | Enforcement of Judgment |
| ☐ Business tort/unfair business practice (07) | Unlawful Detainer | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | ☐ Commercial (31) | Miscellaneous Civil Complaint |
| ☐ Defamation (13) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Drugs (38) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | Judicial Review | Miscellaneous Civil Petition |
| ☐ Professional negligence (25) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Petition re: arbitration award (11) | ☐ Other petition (not specified above) (43) |
| Employment | ☐ Writ of mandate (02) | |
| ☐ Wrongful termination (36) | ☐ Other judicial review (39) | |
| ☐ Other employment (15) | | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.☑ monetary   b.☑ nonmonetary; declaratory or injunctive relief   c.☑ punitive

4. Number of causes of action (specify): 7

5. This case ☐ is ☑ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 17, 2013

Tala Rezai, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>www.sonoma.courts.ca.gov | (FOR COURT USE ONLY)<br><br>E N D O R S E D<br>F I L E D<br><br>JUL 22 2013<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
|---|---|
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE** | Case number:<br>SCV  254005 |

**A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT
AND WITH ANY CROSS-COMPLAINT**

1. **THIS ACTION IS ASSIGNED TO HON.** **ELLIOT LEE DAUM** **FOR ALL PURPOSES.**
   Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear
   below the number of the case and the nature of the paper on the first page of each paper
   presented for filing.
2. EACH DEFENDANT MUST FILE A WRITTEN RESPONSE TO THE COMPLAINT AS
   REQUIRED BY THE SUMMONS.
   A Case Management Conference has been set at the time and place indicated below:

| Date: **NOV 1 9 2013** | Time: 3:00p | Courtroom: 46 |
|---|---|---|
| Location: **3035 CLEVELAND AVE STE 200<br>SANTA ROSA, CA 95403** | | |

3. No later than 15 calendar days before the date set for the case management conference or
   review, each party must file a case management statement [Judicial Council form #CM-110] and
   serve it on all other parties in the case. In lieu of each party's filing a separate case management
   statement, any two or more parties may file a joint statement.
4. At the conference, counsel for each party and each self-represented party must appear personally
   or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and
   must be prepared to discuss and commit to the party's position on the issues listed in California
   Rules of Court, Rule 3.727.
5. Pre-approved dispositions are recorded three (3) court days prior to the case management
   conference. These may be obtained by calling (707) 521-6883 or by going to
   http://sonoma.courts.ca.gov/online-services/tentative-rulings.

## ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with the requirements stated in the California
Rules of Court, rules 2.30, 3.110, and/or 3.720 through 3.771 inclusive, you must then and there
show cause why this court should not impose monetary and/or terminating sanctions in this matter.

CV-1 [Rev. February 19, 2013] NTC OF ASSIGNMENT OF 1 JUDGE FOR ALL PURPOSES, NTC OF CMC & OSC   CRC, Rules 3.110, 3.720-3.730   CCP§§177.5, 583.410

Page 9

COPY

Chad T.W. Pratt, Sr. (SBN 149746)
Susan M. Murphy (SBN 185335)
Tala Rezai (SBN 271949)
REAL ESTATE LAW CENTER, PC
695 South Vermont Avenue, Suite 1100
Los Angeles, CA 90005
T. 213-201-6353
F. 213-281-9627

ATTORNEYS FOR PLAINTIFF

ENDORSED
FILED

JUL 22 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

BY FAX

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN THE COUNTY OF SONOMA

DORI CIOCIOLO, an individual,

    Plaintiff,

    v.

BARCLAYS BANK, PLC, a subsidiary of
BARCLAYS.PLC, as successor in interest to
LEHMAN BROTHERS BANK, FSB, a
national banking institution; AURORA LAON
SERVICES LLC, a business entity;
NATIONSTAR MORTGAGE LLC, a
business entity; OLD REPUBLIC DEFAULT
MANAGEMENT SERVICES, a business
entity; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a
business entity; and DOES 1 through 10
inclusive,

    Defendants.

CASE NO: SCV 254005

COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF FOR:

1) CANCELLATION OF VOID
   CONTRACT [CAL. CIV. CODE §§
   1670.5, 1689, 3412, 1575 AND 1692
   (RESTITUTION)]; BREACH OF
   CONTRACT;
2) ACTUAL FRAUD [CAL. CIV. CODE
   § 1572(3)(5)];
3) BREACH OF FIDUCIARY DUTY;
4) QUIET TITLE;
5) DECLARATORY RELIEF;
6) VIOLATION OF CALIFORNIA
   BUSINESS AND PROFESSIONS
   CODE §17200;
7) VIOLATION OF THE COVENANT
   OF GOOD FAITH AND FAIR
   DEALING

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to California Business

and Professions Code §17204 and California Code of Civil Procedure §410.10. This Court has

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Page 1

personal jurisdiction over the parties because Defendants work, reside, and/or systematically do business in the County of Sonoma. The property secured by the Note and Deed of Trust at issue in this Complaint is a single family residence located in the County of Sonoma. The property address is 2087 Blucher Valley Road, Sebastopol, CA 95472 (hereafter "the Residence").

## INTRODUCTION

1.     This is an action brought by Plaintiff for Declaratory Judgment, Injunctive and Equitable Relief, and for Compensatory, Special, General, and Punitive Damages.

2.     This is an action brought by Plaintiff Dori Ciociolo (hereafter "Plaintiff") because of systematic bad faith lending practices by Defendant Lehman Brothers Bank, FSB (hereafter "Lehman Brothers"), Defendant Aurora Loan Services LLC (hereafter as "Aurora"), Defendant Nationstar Mortgage LLC (hereafter "Nationstar"), Defendant Old Republic Default Management Services (hereafter "Old Republic") and Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") that damaged Plaintiff, including:

        a.  Selling Plaintiff a Deed of Trust that was a high-cost, high-interest loan that circumvented underwriting standards and would eventually become impossible for Plaintiff to repay;

        b.  Deceiving Plaintiff into borrowing more than she could afford in order that Defendants would maximize their immediate profit;

        c.  Misleading Plaintiff about her loan terms so that Plaintiff did not know the true nature of her loan at the time she signed;

        d.  Offering illusory "modification proposals" to Plaintiff who was induced to make thousands of dollars in payments, without providing the proper authority or right to offer these modifications;

    e.  Negligently applying Plaintiff's payments to an erroneous history of her loan and reinstatement figures; and

    f.  Recording a Notice of Default, without perfected title and without any regard that it was in violation of the "dual-tracking" laws.

3.    This is an action brought because Plaintiff, homeowner, disputes the title and ownership of the Residence, which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned, and/or transferred their ownership and security interest in the Promissory Note and Deed of Trust and therefore do not have lawful ownership or a security interest in the Residence which is described in detail herein.

4.    This action is brought because Defendant MERS is named as the beneficiary of Plaintiff's Deed of Trust, which states that MERS is "acting solely as nominee for the lender and Lender's successors and assigns" and MERS has been utilized to transfer ownership of the Note and Deed of Trust, but has never been the holder of Plaintiff's Note and has never endorsed Plaintiff's Note into a securitized Trust or assigned Plaintiff's Deed of Trust to another lender and/or servicer.

5.    This action is brought because Plaintiff seeks a Declaratory Judgment that Defendant Lehman Brothers is a broker, and therefore created a fiduciary duty to Plaintiff, to put Plaintiff's needs before their own, which they breached by fraudulent inducement and concealment when they increased the closing costs of the loan, inflated Plaintiff's monthly income, overstated and inflated the appraisal of the Residence, circumvented underwriting standards, lent Plaintiff more than was justified and misled Plaintiff as to the purpose of Plaintiff's loan, the terms of Plaintiff's loan, and Plaintiff's ability to pay her loan.

6.     This action is brought because Defendants Aurora and Nationstar have been wrongfully demanding loan payments from Plaintiff when neither Aurora nor Nationstar is the holder of Plaintiff's Note and Plaintiff does not know who actually has an interest in the loan.

7.     This action is brought because Defendants Aurora and Nationstar have been wrongfully demanding loan payments from Plaintiff when neither Aurora nor Nationstar have provided Plaintiff with an accurate payment history or a precise reinstatement quote and Plaintiff does not know the actual loan balance.

8.     This action is brought because Defendant Aurora continued to tell Plaintiff that she was in foreclosure but never offered Plaintiff any alternatives and did not record a Notice of Default, so that Aurora could extort as much money as possible from Plaintiff prior to selling the loan to Defendant Nationstar.

9.     This action is brought because Defendant Nationstar has requested modification documents from Plaintiff, while at the same time authorizing Defendant Old Republic to initiate foreclosure proceedings on the Residence, even though Plaintiff was in a modification review.

10.    This action is brought because Defendant Old Republic is named as the trustee of Plaintiff's Deed of Trust under the Notice of Default, but has never been the holder of Plaintiff's Note, has never been assigned Plaintiff's Deed of Trust, and yet initiated foreclosure proceedings.

## THE PARTIES

11.    At all relevant times herein, Plaintiff Dori Ciociolo resided in, and continues to reside in Sebastopol, County of Sonoma, State of California.

12.    Plaintiff is informed, believes, and upon such information and belief alleges that at all times relevant Defendant Lehman Brothers, a national banking institution, was authorized to do

business in the State of California. Lehman Brothers is the original mortgage broker and original lender used to purchase the loan. On September 15, 2008, Lehman Brothers filed for Chapter 11 bankruptcy protection following the massive exodus of most of its clients, drastic losses in its stock, and devaluation of its assets by credit rating agencies. Lehman Brothers was acquired by Barclays PLC, with a business address of 200 Park Avenue, New York, NY 10166.

13. Plaintiff is informed, believes, and upon such information and belief alleges that at all times relevant Defendant Aurora Loan Services LLC, a Business Entity, form unknown, was authorized to do business in the State of California, with a business address of 10350 Park Meadows Drive, Littleton, CO 80124. Plaintiff is informed, believes, and thereupon alleges that Aurora Loan Services LLC serviced the loan at one time, and may still be the current servicer of Plaintiff's loan.

14. Plaintiff is informed, believes, and upon such information and belief alleges that at all times relevant Defendant Nationstar, a Business Entity, form unknown, was authorized to do business in the State of California, with a business address of 350 Highland Drive Lewisville, TX 75067. Plaintiff is informed, believes, and thereupon alleges that Nationstar serviced the loan at one time, and may still be the current servicer of Plaintiff's loan.

15. Plaintiff is informed, believes, and upon such information and belief alleges that at all times relevant Defendant Old Republic, a Business Entity, form unknown, was authorized to do business in the State of California, with a business address of 500 City Pkwy W, Orange, CA 92868. Plaintiff is informed, believes, and thereupon alleges that Old Republic recorded the Notice of Default although never having the authority to proceed with foreclosure, due to lack of perfect chain of title, and the fact of the loan modification review between Plaintiff and Nationstar.

16.   Plaintiff is informed, believes, and upon such information and belief alleges that at all times relevant herein, Defendant MERS, was, and is, a Delaware corporation doing business in the State of California, with its principal place of business located at 1818 Library Street, Suite 300, Reston, VA 20190.   MERS is a process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked.   MERS eliminates the need to prepare and record assignments when trading residential mortgage loans.   MERS is the alleged nominee for the lender beneficiary of the Deed of Trust.

17.   Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 10, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Residence.   Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.   Plaintiff is informed, believes and therefore alleges that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

18.   The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severally, not only named Defendants, but all Defendants designated as Does 1 through 10, as well.

19.   Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named Defendants are contractually, strictly, negligently, intentionally, vicariously liable and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said fictitiously named Defendants are indebted to Plaintiff as hereinafter alleged.

20.     Plaintiff is further informed, believes, and thereon alleges that at all times herein mentioned Defendants were agents, servants, employees, alter egos, superiors, successors-in-interest, joint venturers and/or co-conspirators of each of their co-Defendants and in doing the things hereinafter mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors-in-interest, joint venturers, and/or co-conspirators with the permission and consent of their co-Defendants, and consequently each Defendant named herein, and those Defendants named herein as Does 1 through 10, inclusive, are jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

21.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff as alleged herein.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

22.     Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, *inter alia*, to financially benefit Defendants at the expense of Plaintiff by engaging in fraudulent activities.  Defendants accomplished their conspiracy, common enterprise and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and

substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, *inter alia*, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct complained of herein.

23.     Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

## FACTUAL ALLEGATIONS

### Plaintiff' Refinance Loan

24.     In December 2006, Plaintiff refinanced the Residence located at 2087 Blucher Valley Road, Sebastopol, CA 95472. Plaintiff executed a series of documents, including but not limited to, a Note and Deed of Trust, securing the Note in the amount of six hundred fifty thousand dollars ($650,000) on the Residence.  A second loan was also secured by a Note in the amount of eighty-five thousand dollars ($85,000).

25.     Plaintiff had a twenty-five percent (25%) equity in the Residence upon receiving the mortgages.

26.     The alleged original lender for the mortgage loan was Lehman Brothers.

27.     The alleged original trustee for the mortgage loan was First American Title Insurance.

28.     The alleged original beneficiary and nominee under the Deed of Trust was MERS.

29.     The alleged original lender for the second mortgage loan was also Lehman Brothers.

30.     Plaintiff and her family had lived in the Residence since 1992, when they purchased it.

31.     Plaintiff sought out the refinance loan with help from a mortgage broker and agent of Lehman Brothers.

32.     Lehman Brothers's agent promised Plaintiff a fixed annual interest rate with low payment.

33.     Lehman Brothers's agent sold the loan to Plaintiff as a fixed rate loan.

34.     The Note was titled "Fixed Rate Promissory Note".

35.     Plaintiff was never aware that it was not a "Fixed Rate Promissory Note" until September 2010.

36.     Plaintiff had a thirty (30) year monthly Adjustable Rate Mortgage ("ARM") with a five (5) year interest-only period.

37.     It was an ARM loan that has a variable interest rate.

38.     Plaintiff was never fully aware that the loan was actually not at a fixed interest rate but an adjustable rate.

39.     Lehman Brothers's agent sold the loan to Plaintiff as a fixed rate loan and the Note was title "Fixed Rate Promissory Note" so Plaintiff never thought that it was an adjustable rate loan.

40.     Brokers and lenders called these loans a "toxic product". Despite being a "toxic" loan, Lehman Brothers actively solicited and encouraged the Plaintiff into an ARM loan by representing that it was a quality loan.

41.     Plaintiff did not have correct knowledge of the nature and terms of the loans when she signed. Plaintiff signed a "Fixed Rate Promissory Note" but Defendants are now claiming that it is an adjustable rate loan.

42.     There was further fraud on this loan by the excessive and/or bogus fees for work that was not actually performed.  Such fraudulent fees, as alleged, include an underwriting fee, processing fee and appraisal fees.

43.     Plaintiff should have never received such a high loan amount with such a high interest rate and usurious terms.  Plaintiff thought she was receiving a fixed rate loan.

44.     Lehman Brothers did not request any documentation from Plaintiff to qualify her for this loan.

45.     Plaintiff was never aware that she should not have been qualified for this loan until after September 2010.

46.     The housing boom and bust often is blamed on an unfortunate mix of lax lending practices and a slowdown in home prices.  Yet mortgage records, court documents and interviews with former Lehman Brothers employees suggest that management practices may have been largely responsible for the crisis because they enabled fraud to run rampant.

47.     In its headlong rush to grow, Lehman Brothers, like most subprime lenders, tossed aside its tried-and-true tools for identifying risky borrowers and catching fraud in the form of falsified loan applications.  As part of the company's business plan, Lehman Brothers required little or no documentation from borrowers or allowed alternate forms of documentation, such as credit letters from landlords, which could be faked or forged.

48.     A report on Lehman Brothers was submitted to the United States Congress House Committee on Financial Services in April 2010 in which the omissions, failures and negligence of Lehman Brothers were exposed.  "Lehman's failure is a story in large part of fraud.  And it is fraud ... with their subprime and liars' loan operations.  Lehman was the leading purveyor of liars' loans in the world.  For most of this decade, studies of liars' loans show incidence of fraud

of 90%. Lehmans sold this to the world, with reps and warranties that there were no such frauds. If you want to know why we have a global crisis, in large part it is before you." (See Exhibit "A" - http://fdlaction.firedoglake.com/2010/04/20/transcript-video-bill-black-testimony-on-lehman-bankruptcy/).

49.   Plaintiff was unaware that she received a "liars' loan" until after November 2011.

50.   Plaintiff thought at the time that the loan from Lehman Brothers must be legal because it was available.

51.   Plaintiff is informed, believes, and thereupon alleges that she received a fraudulent "liars' loan" from Lehman Brothers, and thatshe should have never been qualified for this loan.

52.   Plaintiff believes that after she executed the Uniform Residential Loan Application, Lehman Brothers, through their agents, must have fabricated her employment income per month so that she would be approved for the loan.

53.   Plaintiff was unaware that Lehman Brothers and/or their agents manufactured the false employment income prior to preparing for this Complaint.

54.   Plaintiff believes that Lehman Brothers also artificially inflated the appraised value of Plaintiff's Residence. Plaintiff believes that Defendants encourage appraisers to inflate the value of homes in purchases to induce the homeowner into borrowing more money than they otherwise would. This action by Lehman Brothers caused Plaintiff to lose twenty-five percent (25%) of the equity in the Residence.

55.   Lehman Brothers' agent provided an appraisal, approved by Defendant, of more than nine hundred fifty thousand dollars ($950,000) for the Residence. Plaintiff alleges that Lehman Brothers, through their agents, artificially inflated the appraised value of the Residence. The fair market value of the Residence is now approximately seven hundred thousand dollars ($700,000).

56.     Plaintiff is informed, believes, and thereupon alleges that she was steered into this high-cost, high-risk "liars' loan" with these usurious terms by the Defendant Lehman Brothers and/or its agents.

57.     Plaintiff was misled to believe that she was eligible for this refinance loan by the broker and agent of Lehman Brothers when she should have never been qualified.

58.     Defendants have admitted that they have improperly handled hundreds of thousands of mortgages nationwide. (See Exhibit "B" - New York Times Article: "Flawed Paper Work Aggravates a Foreclosure Crisis"; Exhibit "C" - New York Times Article: "Some Sand in the Gears of Securitizing,"; and Exhibit "D" - New York Times Article: "Bankers Ignored Signs of Trouble on Foreclosures").

59.     Lehman Brothers's agents have acknowledged that although they noticed clues of mortgage fraud, such as suspicious income, questionable appraisals or missing documents, the loans usually were approved anyway. (See Exhibit "A"). Senior managers at Lehman Brothers aggressively pushed loans through.

60.     The mortgage broker and agent of Lehman Brothers also promised Plaintiff that she would be able to refinance within one (1) or two (2) years.

61.     Other homeowners similarly situated like Plaintiff have also testified that the mortgage brokers and agents of Lehman Brothers promised them that they would receive fixed rate notes for two (2) years which they then would be able to refinance shortly after that. (See Exhibit "E" - http://www.denverpost.com/headlines/ci_10473057).

62.     When the loan closed, Plaintiff thought that Lehman Brothers was the servicer of the loan.

63.     When the loan closed, Plaintiff received mortgage statements from Aurora.

64.     As a result of mortgage fraud being a topic in the news Plaintiff began to scrutinize her mortgages and noticed that the first mortgage stated a fixed rate loan, but that in five (5) years it would adjust.

65.     Plaintiff questioned the legality of the loan – a loan which was set to adjust in 2012 but was labeled as a "Fixed Rate Promissory Note".

66.     Plaintiff has always been adamant that she received a fixed rate loan and to leave equity in the Residence during a refinance.

67.     On July 21, 2010 Plaintiff sent a letter to the Office of Thrift Supervision inquiring about the relation of Aurora with her loan and requesting information on the legality of a fixed rate loan that adjusted.

68.     On August 13, 2010 Plaintiff received a letter from Aurora that Aurora could not properly respond to her inquiry.

69.     Plaintiff fell behind on both loans in 2011 and reinstated both loans and was current in October 2011.

70.     The first mortgage reinstatement amount was properly credited to Plaintiff's account.

71.     However, on the second mortgage Plaintiff paid Aurora six thousand one hundred dollars ($6,100). This payment was never credited to Plaintiff's account and Plaintiff continued to get billed for it.

72.     Plaintiff felt the money she was sending in was not properly accounted for and started to withhold all payments to Aurora.

73.     In November 2011 Plaintiff received a notice from Aurora that her loan terms were set to adjust.

74.   Plaintiff called Aurora after receipt of this notice and spoke with an agent of Aurora. Plaintiff had paid Aurora six thousand one hundred dollars ($6100) for the second mortgage.

75.   Plaintiff's payment history did not reflect this payment deduction.

76.   Plaintiff did not pay on the first loan for November 2011 and December 2011.

77.   Plaintiff requested a reinstatement from Aurora.

78.   Aurora did not send Plaintiff a reinstatement quote.

79.   Plaintiff called Aurora and Aurora's agent told Plaintiff via a phone call that they were referring Plaintiff to Aurora's attorney.

80.   Plaintiff never received any communication from Aurora's attorney.

81.   Plaintiff called Aurora and was transferred to the foreclosure department instead of the legal department.  Agents of Aurora apologized, but continued to code the loan as in foreclosure and did not fix their mistake.

82.   From March 2012 Plaintiff tried to get a reinstatement quote from Aurora on her loans.

83.   Plaintiff called Aurora numerous times from December 2011 to June 2012.

84.   In June 2012 Plaintiff received a reinstatement quote from Old Republic.

85.   The reinstatement quote was sent to Plaintiff three (3) months after Plaintiff's request.

86.   The June 2012 reinstatement quote was incorrect and stated an inaccurate amount.

87.   The reinstatement quote had late fees, extra charges, and attorneys' fees listed, including an amount of one thousand four hundred eighty-two dollars and sixty cents ($1,482.60) and an amount of seven hundred eighty-three dollars and ninety-one cents ($783.91).  In addition, the monthly payments reflected varying amounts, each over $8000, which was far in excess of the $4542.37 that Plaintiff was supposed to pay.

88.   Plaintiff requested a payment history from Aurora.

89.     Plaintiff paid Aurora approximately six thousand one hundred dollars ($6,100) to bring the second mortgage current in September 2011. This amount was never credited to the second mortgage by Aurora.

90.     Plaintiff learned that her Residence was in purported foreclosure from Old Republic in June 2012. Plaintiff was informed that her Residence was in foreclosure since March 2012.

91.     Plaintiff is informed, believes, and thereupon alleges that Aurora tried to extort as much money as possible from Plaintiff prior to the selling or transferring of the loan to Nationstar.

92.     Agents of Aurora told Plaintiff that the six thousand one hundred dollars ($6100) payment for the second mortgage was placed in a special account and assured Plaintiff that the money would be credited to her account.

93.     However, there has been no accounting of these monies.

94.     In March 2013 Plaintiff received a Notice of Default and Election to Sell Under Deed of Trust.

95.     The Notice of Default and Election to Sell Under Deed of Trust identifies the trustee sale no. 12-47007.

96.     The Notice of Default and Election to Sell Under Deed of Trust identifies Old Republic as appointed Trustee under and pursuant to Deed of Trust.

97.     On information and belief, the subject property was being foreclosed on by Old Republic. The Notice of Default and Election to Sell Under Deed of Trust denominated Old Republic as the appointed Trustee under the Deed of Trust.

98.     The original Deed of Trust names First American Title Insurance as the trustee.

99.    Plaintiff is unsure as to whether Old Republic is the authorized agent of First American Title Insurance, the original trustee, or the authorized agent of Lehman Brothers, the original lender.

100.    No Assignments of Deed of Trust have been recorded or executed.

101.    Old Republic purported to be the lien holder but has never been assigned Plaintiff's Deed of Trust.

102.    Plaintiff alleges that she never granted any interest to Old Republic.

103.    Plaintiff would have been current on the mortgage save for the problems with the reinstatement quote, the lack of proper crediting of payments, and Defendants' fraudulent statements telling Plaintiff that the loan was a fixed rate.

104.    Old Republic did not provide Plaintiff with any options.

105.    The recording of the Notice of Default was in violation of the "dual-tracking" laws in California.

106.    "Dual-tracking" has been declared unlawful according to California Civil Code §2923.6(c) which now states in relevant part:

> "if a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage service, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."

107.    Plaintiff is informed, believes and thereupon alleges that the loan modification with Nationstar was pending within the meaning of the statute since Nationstar continued to request updated documents, bank statements, and other mortgage-related items. The egregious acts of Nationstar, in encouraging Plaintiff to rely on the modification process as an alternative to foreclosure, at the same time that Old Republic was recording a Notice of Default and letting the

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF                                                    Page 16

Residence go to sale, is exactly the type of "dual-tracking" that California Civil Code §2923.6(c) addresses.

108.    Plaintiff is informed, believes and thereupon alleges that there is a scheme and plot between all the Defendants at the expense of Plaintiff.

109.    Plaintiff is informed, believes, and thereupon alleges that Nationstar is not even authorized to negotiate a loan modification with Plaintiff, and has wrongfully induced Plaintiff through fraudulent misrepresentation to believe that Nationstar would or could review Plaintiff for a loan modification.

110.    Plaintiff believes that because they have lost value in their Residence, and because the records from Aurora were not accurate, Nationstar will not modify their loan.

111.    Plaintiff is informed, believes, and thereupon alleges that the loan was sold into a securitized Trust. The investor of the securitized Trust is undisclosed to Plaintiff at this time.

112.    The value of Plaintiff' Residence has decreased, and Plaintiff is informed, believes, and thereupon alleges that Defendants inflated the appraisal of the Residence so that Plaintiff could take out a larger loan.

113.    The lost value of the Residence and the omissions, failures and statements made by Defendants' agents forced Plaintiff into default.

114.    Defendants have not provided Plaintiff with any other alternatives.

115.    Plaintiff believes that both Aurora and Nationstar's management and process have been extremely incompetent and obstructive, and have caused her to potentially lose her Residence.

116.    Plaintiff is informed, believes, and thereupon alleges that Nationstar currently is not authorized to negotiate a loan modification with Plaintiff and has wrongfully induced Plaintiff

through fraudulent misrepresentation to believe that Nationstar would or could review Plaintiff for a permanent loan modification.

117.   Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them.  Plaintiff desires a judicial determination and declaration of her rights with regard to the Residence and the corresponding Promissory Note and Deeds of Trust.  Plaintiff desires a judicial determination of the principal party that they actually owe their debt to, whether this principal is entitled to collect this debt, and whether this debt is secured by the Residence.

118.   There are questions of law and fact, including, but not limited to, the following: the nature, scope and operation of Lehman Brothers, Aurora and Nationstar's obligations to homeowners under the Promissory Note and Deed of Trust; whether the failure of Lehman Brothers, Aurora and Nationstar to provide information regarding the ownership of the loan constitutes a breach of contract and/or breach of the covenant of good faith and fair dealing; whether the failure of Lehman Brothers, Aurora and Nationstar to provide appropriate documents and disclosures amounts to a breach; whether the failure of Lehman Brothers, Aurora and Nationstar to do their due diligence and provide accurate data on the Uniform Residential Loan Application amounts to a breach of unfair business practices and fraud and/or negligent lending; and whether the Court can order damages.

119.   Plaintiff believes that Lehman Brothers, Aurora and Nationstar have breached their duty as fiduciary in the agency relationship in that they have acted in a manner that puts their own profits and benefits ahead of their principal's.  In doing so, Plaintiff has been harmed by this breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty, and Plaintiff is entitled to damages.

120.    Plaintiff is informed, believes, and thereupon alleges she has been driven to default by

these unfair and fraudulent business practices of Lehman Brothers, Aurora and Nationstar and by

Lehman Brothers, Aurora and Nationstar's fraudulent misrepresentations.

## Defendants' Nondisclosures to Plaintiff

121.    Plaintiff is unsure as to whether Nationstar is the servicing agent for Lehman Brothers,

the original lender.

122.    Plaintiff is unsure as to whether Old Republic is acting as the trustee for Lehman

Brothers, the original lender, or for Nationstar, the current servicer.

123.    Plaintiff believes that Aurora failed to record a Notice of Default when Plaintiff initially

defaulted in order to extort as much money and fees as possible before selling the loan to

Nationstar.

124.    No Assignments of Deed of Trust have been recorded or executed.

125.    Nationstar purports to be the lien holder but has never been assigned Plaintiff's Deed of

Trust.

126.    Plaintiff alleges that she never granted any interest to Nationstar, Aurora or MERS.

127.    Pursuant to California Civil Code §2932.5, an Assignment of a Deed of Trust must be in

proper written format and recorded to provide notice of the Assignment to the borrower.

> California Civil Code §2932.5 reads in relevant part:
> "Where a power to sell real property is given to a mortgagee, or
> other encumbrancer, in an instrument intended to secure the
> payment of money, the power is part of the security and vests in
> any person who by assignment becomes entitled to payment of the
> money secured by the instrument. The power of sale may be
> exercised by the assignee if the assignment *is duly acknowledged
> and recorded* [emphasis added]."

128.    According to 12 USC §2605, subtitled "SERVICING OF MORTGAGE LOANS AND

ADMINISTRATION OF ESCROW ACCOUNTS," whenever a loan is assigned to a new

assignee, borrowers must be given written notice of that transfer within fifteen (15) days of the

effective date of transfer.

> 12 USC §2605(c)(2)(A) states in relevant part:
> "Except as provided in subparagraphs (B) and (C), the notice
> required under paragraph (1) shall be made to the borrower not
> more than 15 days after the effective date of transfer of the
> servicing of the mortgage loan (with respect to which such notice
> is made)."

129.   Plaintiff has, as yet, received no notice of any Assignment of the Deed of Trust to any

entity, pursuant to 12 USC §2605(c)(2)(A) or California Civil Code §2932.5.

130.   Plaintiff alleges that in order for the investor of the securitized Trust to have a valid and

enforceable secured claim against Plaintiff's Residence, that entity must prove and certify to all

parties that, among other things, there is a complete and unbroken chain of title.

131.   Plaintiff further seek redress from Defendants, indentified herein below, for damages, for

other Injunctive Relief, and for cancellation of written instruments based upon:

    a.    An invalid and unperfected security interest in Plaintiff's Residence;

    b.    Void "true sale(s)" violating New York Law and express terms of the
    Pooling and Servicing Agreement governing the securitization of Plaintiff's
    mortgage, which is a Trust Agreement required to be filed under penalty of
    perjury with the United States Securities and Exchange Commission ("SEC") and
    which, along with another document, the Mortgage Loan Purchase Agreement
    ("MLPA"), is the operative securitization document created by the finance and
    securitization industry to memorialize securitization transactions;

    c.    An incomplete and ineffectual perfection of a security interest in
    Plaintiff's Residence due to Violations of California Business and Professions
    Code §17200; and

    d.    A void or voidable Deed of Trust due to improper securitization, for which
    there is a reasonable apprehension that, if left outstanding, may cause a serious
    injury.

132.    Plaintiff is informed, believes and thereupon alleges that the stockholders of the securitized Trust are the only ones to which Plaintiff owe any debt and that this debt is no longer securitized due to the failure of Defendants to show proper receipt, possession, transfer, negotiations, assignments and ownership of the Promissory Note and Deed of Trust, thereby resulting in imperfect security interests and claim.  Plaintiff alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deeds of Trust herein; therefore Defendants do not have the ability to establish that the mortgages that secure the indebtedness, or the Note, were legally or properly acquired.

133.    Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them.  Plaintiff desires a judicial determination and declaration of their rights with regard to the Residence and the corresponding Promissory Note and Deeds of Trust.  Plaintiff desires a judicial determination of the principal party that they actually owe their debt to, whether this principal is entitled to collect this debt, and whether this debt is secured by the Residence.

134.    The Plaintiff has no idea who currently owns the loan.

135.    On information and belief, bogus and fraudulent assignments exist that have been executed by employees of mortgage default solutions companies, as officers of MERS, as nominee for Lehman Brothers. On information and belief, bogus and fraudulent assignments exist that have been executed by employees of mortgage default solutions companies, which assignments purport to transfer the beneficial interest in the mortgage, along with the Note thereby secured. On information and belief, bogus and fraudulent assignments exist that have

been executed by MERS, as nominee for Lehman Brothers, which assignments purport to transfer the beneficial interest in the mortgage, along with the Note thereby secured.

136.   MERS never had an interest in the Deed of Trust or the Note.

137.   The Note does not name MERS.

138.   MERS never had authority from Lehman Brothers to transfer their interest in the Note to anyone, including to the Trustee of the securitized Trust.

139.   On information and belief, Plaintiff's Deed of Trust and Note became split during the securitization process as a result of untimely assignment of either the Deed or Note, or both.

140.   Any attempt to transfer the beneficial interest of a Deed without ownership of the underlying Note is void under California law.

141.   Plaintiff alleges that they also never granted any interest to Aurora or Nationstar.

142.   Neither Aurora nor Nationstar was the original lender under the subject Deed or the original holder of the Note secured by the Deed.

143.   Neither Aurora nor Nationstar was the original servicer of the subject loan.

144.   Neither Aurora nor Nationstar is the current holder of the Note or the Deed.

145.   Plaintiff is unsure as to who is the current holder of the Note or the Deed of Trust.

146.   Plaintiff has no idea to whom, if anyone, Plaintiff owes money under the subject Note and no idea who, if anyone, holds an enforceable security interest.

147.   Defendants' institutional bad faith amounts to reprehensible conduct because the conduct is part of a repeated pattern of unfair practices – as fully set forth above – and not an isolated occurrence.  This pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in the established companies of Defendants.

148.   Plaintiff is informed, believes, and thereupon alleges that she has have been driven to default by these unfair and fraudulent business practices of all Defendants and by Defendants' fraudulent misrepresentations.

### MERS Argument

149.   Plaintiff is informed, believes, and thereupon alleges that MERS, which has been named on Plaintiff' Deed of Trust herein as "beneficiary," has been utilized by Defendants to facilitate mortgage securitization by allowing Defendants to conveniently (and unlawfully) bundle loans together to be sold into Trusts. Plaintiff alleges that MERS lacks the authority under its corporate charter to assign an interest to a securitized mortgage because MERS' charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities. Plaintiff alleges that MERS never had the authority, or the ability, to transfer or assign Plaintiff's Note or Deed of Trust into a securitized Trust.

150.   Plaintiff is informed, believes, and thereupon alleges that MERS cannot be an agent of Defendants in transferring Plaintiff's Note or Deed of Trust into a securitized Trust since agency principles require that the principal be responsible for the acts of their agents and require that the principal be identified. Defendants, and each of them, used MERS as beneficiary in order to generate an Assignment that made it impossible for Plaintiff to know which entity owned the loan. Plaintiff alleges that the above mentioned series of transactions is a systematic practice of Defendants to promote the type of fraud that occurred in this case.

151.   Plaintiff further alleges that Defendants utilized MERS as well as other unfair business practices to hide substitutions and assignments from Plaintiff's view in frustration of the recording statutes.

## Nationstar as a Party

152.   Plaintiff is informed, believes, and thereupon alleges that Nationstar is a servicer and therefore an agent for a partially undisclosed principal under common law agency.

153.   The Plaintiff contends they are a third party to the agency.

154.   Since Plaintiff receives mortgage statements from Nationstar, and since the principal is unknown to the Plaintiff at this time, pursuant to the common law and Restatement of Agency, the Plaintiff is electing to hold the agent liable for the acts of the agency, however, reserving the right, prior to judgment, to elect to hold the principal liable.

155.   The Plaintiff, on information and belief, contends that Nationstar has breached its duty as fiduciary in its agency relationship with the undisclosed principal in that it has acted in a manner that put its own profits and benefits ahead of its principal's.  In doing so, the Plaintiff has been harmed by this breach of fiduciary duty had they been acting directly with the undisclosed principal.

156.   In addition, loan servicers such as Nationstar are paid by and beholden to the investors that hold the principal and interest rights to the loans they service.  Moreover, for loans in default, past due, and/or on the brink of foreclosure, a servicer may make more money in fees. As a result, it is in the servicer's interest to have loans in default and arrears for as long as possible prior to foreclosure, and then to foreclose.  In fact, servicers like Nationstar stand only to lose revenue by giving loan modifications to borrowers instead of foreclosing.  But, as already noted, it is in the servicer's interest to delay foreclosure when by doing so it can collect additional sums from distressed borrowers prior to the foreclosure.

157.   During discovery, Plaintiff will seek to determine if the principal of Nationstar has ratified any unauthorized acts of Nationstar.

158.   Under the equal dignities rules, Nationstar, in presenting contracts and modifications to the Plaintiff, must show that they have written authority from their principal to execute such contracts and modifications.

159.   Plaintiff believes that Defendants have breached their duty as fiduciary in the agency relationship in that they have acted in a manner that puts their own profits and benefits ahead of their principal's. In doing so, Plaintiff has been harmed by this breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty, and Plaintiff is entitled to damages.

160.   This is an extreme case of what borrowers endure as a result of this abusive business practice by Defendants (and other lenders and servicers) and illustrates the harm that is caused, to a greater or lesser degree, to millions of American homeowners by this practice.

### FIRST CAUSE OF ACTION:
### CANCELLATION OF VOID CONTRACT [CAL. CIV. CODE §§1670.5, 1689, 3412, 1575 AND 1692 (RESTITUTION)]; BREACH OF CONTRACT (AS AGAINST ALL DEFENDANTS)

161.   Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

162.   California Civil Code §1670.5 provides in relevant part that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract..." Civil Code §1689(b) provides in relevant part that "a party to a contract may rescind the contract ... (1) [i]f the consent of the party rescinding (was obtained through) fraud [or] ... (5) if the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault [or] ... (6) if the public interest will be prejudiced by permitting the contract to stand." Civil Code §3412 in like manner provides that "... [a] written instrument, in respect to which there is a reasonable

apprehension that if left outstanding it may cause serious injury to a person against whom it is

void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or

canceled." In accordance with the provisions of California Civil Code §1692, once the contract

has been found to be void and cancelled, Plaintiff are entitled to restitution of all monies paid,

including closing costs and interest and principal payments.

163.    Moreover, tender is not a condition of restitution in this case, as numerous exceptions to

such a requirement are applicable in this case. There are four exceptions to the tender

requirement.

> "First, if the borrower's action attacks the validity of the underlying debt, a tender
>
> is not required since it would constitute an affirmation of the debt. (*Stockton [v.*
>
> *Newman]*, (1957) 148 Cal. App. 2d at p. 564) [trustor sought rescission of the
>
> contract to purchase the property and the promissory note on grounds of fraud];
>
> *Onofrio [v. Rice]*, 55 Cal. App. 4th at p. 424). Second, a tender will not be
>
> required when the person who seeks to set aside the trustee's sale has a counter-
>
> claim or set-off against the beneficiary. In such cases, it is deemed that the tender
>
> and the counter claim offset one another, and if the offset is equal to or greater
>
> than the amount due, a tender is not required. (*Hauger [v. Gates]*, (1954) 42 Cal.
>
> 2d at p. 755). Third, a tender may not be required where it would be inequitable
>
> to impose such a condition on the party challenging the sale. (*Humboldt Savings*
>
> *Bank v. McCleverty* (1911) 161 Cal. 285, 291. Fourth, no tender will be required
>
> when the trustor is not required to rely on equity to attack the deed because the
>
> trustee's deed is void on its face. (*Dimock [v. Emerald Properties]*, 81 Cal. App.
>
> 4th at p. 878, 97 Cal. Rptr. 2d 255 [beneficiary substituted trustees; trustee's sale

void where original trustee completed trustee's sale after being replaced by new

trustee because original trustee no longer had power to convey property].)" *Lona*

*v. CitiBank, N.A.*, (2011) 202 Cal. App. 4th 89.

Plaintiff qualifies under every exception. Should no exceptions be found to apply, then Plaintiff

offers to tender any amount as may be determined to be owed at the time of trial.

164.    As more fully set forth herein above, the subject contract contains unconscionable terms,

including unqualified adjustments in payments, unjust and fraudulent funding fees, and an

excessive interest rate not justified based on Plaintiff's credit rating. It was reasonably

foreseeable by Defendants, their agents, and all subsequent assignees that such contract terms

would cause a default of the loan and result in economic injury to Plaintiff, including, but not

limited to, the possible loss of her investment and damage to her credit.

165.    Plaintiff alleges that the purchase loan marketed, originated and serviced by Defendants

was unconscionable for the following reasons:

> a.  The loan contained terms for the amount of the monthly mortgage payments that
>     were to be paid over the term of the loan, without regard to whether the borrower
>     qualified for the loan or would be able to pay the increased amounts upon
>     adjustment, thus setting the borrower up for likely or certain default and
>     inevitable foreclosure in contravention of government policies favoring home
>     ownership and disfavoring foreclosure;
>
> b.  Defendant originators did not advise, sufficiently, or, at all, the ramifications of
>     the payment adjustments which would occur;
>
> c.  The loans were based upon false and fraudulent income amounts, false appraisals,
>     and other false documents created, drafted, and/or approved by Defendants.

166.   Such unconscionable acts by Defendants were and are in violation California Civil Code §§ 1596, 1708 and 1709, as the loans were injurious not only to Plaintiff, but also to the public at large, and were deceptive for the reasons stated above.  As such, the contracts were a nullity.

167.   Based on information and belief, Plaintiff alleges that it was reasonably foreseeable by Lehman Brothers that such egregious contract terms would cause a default of the loan, resulting in economic injury to the Plaintiff, including loss of her home improvements, monetary losses such as relocation costs, damage to her credit, and emotional distress associated with the impending foreclosure.  Plaintiff alleges that in many cases, the substantial increase in the loan balance, combined with a high annual interest rate, did in fact lead Plaintiff to default on the loans as the new "adjusted" monthly payments far exceeded the percentage of Plaintiff's income that she was able to commit to a mortgage expense, in violation of California Public Policy expressed in Cal. Civ. Code §1711.

168.   Restatement (Second) of Contracts §177 states that "undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion."  Here, Plaintiff needed to secure the loan and believed she was entering into a fair and equitable contract. However, due to the unfair advantage in the bargaining process of this contract, Plaintiff was taken advantage of as she was deceived into entering a contract where all the benefits laid with the Defendants.

169.   Lehman Brothers took unfair advantage of Plaintiff's position and put her in an unfair and grossly oppressive position.

170.   Lehman Brothers's institutional bad faith amounts to reprehensible and fraudulent conduct because the conduct is part of a repeated pattern of unfair practices. The pattern of unfair

practices constitutes a conscious course of wrongful conduct that is firmly grounded in the established company of Lehman Brothers.

171.    Lehman Brothers's fraudulent acts and bad faith involves a flagrant, arrogant, and unlawful abuse of the process by which brokers and lenders provide mortgage loans to borrowers.

172.    Defendants, and each of them, breached their contractual obligations to Plaintiff as set forth herein. Defendants further breached the contractual obligations owing to Plaintiff in the manners alleged hereinabove.

173.    Plaintiff is informed, believes, and thereupon alleges that as a proximate and foreseeable result of said breaches of contract, Plaintiff has been damaged in a sum according to proof, including attorneys' fees.

174.    Based on the numerous violations of California law, including, but not limited to, Financial Code §4973 (failure to properly qualify Plaintiff and deceitful conduct) and Civil Code §1709 (fraudulent inducement to alter one's financial position), which are designed to protect a class of persons of which the Plaintiff belongs, the Plaintiff seeks cancellation of the loan agreement as void from the inception.  Plaintiff also seeks restitution of all monies paid pursuant to the contract, including earnest money, all closing costs and fees and all principal and interest paid.

175.    Plaintiff is entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein as though fully set forth at length.

## SECOND CAUSE OF ACTION:
## ACTUAL FRAUD [CAL. CIV. CODE §1572]
### (AS AGAINST ALL DEFENDANTS)

176.   Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

177.   "Actual fraud . . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:  (3) The suppression of that which is true, by one having knowledge or belief of the fact; (5) Any other act fitted to deceive."  California Civil Code §1572.

178.   Based on information and belief, Plaintiff alleges that the acts of Defendants were in direct violation of Cal. Civ. Code § 1572, in that each of them or their agents and assigns misrepresented to the Plaintiff that she qualified for the subject loan to induce Plaintiff herein to obtain the loan, purchase the loan, keep and maintain the loan, all of which the Plaintiff did *not* qualify for, the Residence did *not* appraise at, and the Plaintiff could *not* afford.

179.   Based on information and belief, the Plaintiff alleges that Lehman Brothers, their agents and assigns knew that their statements to the Plaintiff regarding her qualification for the subject loan were untrue and false.

180.   Based on information and belief, Plaintiff alleges that Lehman Brothers or their agents fraudulently and deliberately inflated Plaintiff's income to falsely "qualify" and induce her to take out the loan.

181.   In addition, Plaintiff alleges that Lehman Brothers or their agents fraudulently and deliberately inflated Plaintiff's appraisal to falsely "qualify" and induce her to take out the loan.

182.   Based on information and belief, Plaintiff alleges that Lehman Brothers intentionally, maliciously and egregiously took undue and fraudulent advantage of the Plaintiff, who

Defendants knew was in a financially distressed position and thus vulnerable to the type of misrepresentations that were made to her by the Defendants or their agents or assigns.

183.   Plaintiff alleges that Defendant Lehman Brothers had knowledge that this scheme would damage Plaintiff.

184.   Plaintiff is informed, believes, and thereupon alleges that Defendant Lehman Brothers misled Plaintiff by failing to disclose substantial negative information regarding Defendant's loan products, including:

    a.   The lax underwriting guidelines used by Defendant;

    b.   The fact that Plaintiff's loan had a loan-to-value ratio of 100%; and

    c.   Defendants' actual assessment of the risk of default by Plaintiff.

185.   Plaintiff is informed, believes, and thereupon alleges that Defendant, in connection with entering into a contract with Plaintiff, failed to make the proper disclosures to Plaintiff regarding the high-risk nature of the loan.

186.   Plaintiff alleges that, as a result of Defendants' fraudulent misrepresentations, Plaintiff reasonably relied upon the deceptions of Defendants and was thereby damaged.   Plaintiff alleges that Defendants suppressed material facts relating to the risks to Plaintiff of the loan.

187.   Plaintiff alleges that she relied on the superior knowledge and expertise of the Defendants and their agents, and believed the representations made to her as to her qualification for the subject loan were true.

188.   Based on information and belief, Plaintiff alleges that Lehman Brothers knew that their statements to Plaintiff characterizing the material facts of the loan being offered and sold to the Plaintiff, including Plaintiff's qualification for the subject loan, were untrue, and were told to the

Plaintiff for the purpose of inducing her to become legally obligated for the loan based on those false representations.

189.    Based on information and belief, Plaintiff alleges that the acts of Defendant originators, as alleged herein, harmed Plaintiff, by inducing her to obtain a loan that should never have been made, thereby setting the Plaintiff up for inevitable default.  Plaintiff did *not* and could *not* without reasonable inquiry discover or determine this loss, falsehood, and tortious activity of Defendants until 2011or thereafter, when she was actively trying to obtain documents from Aurora.

190.    Based on information and belief, Plaintiff alleges that the facts and identities of the Defendant originators are known to all other Defendants, including the loan servicers and their affiliates, as they all retain the original loan documents and maintain computer-based records of all the loan transactions at issue in this case.

191.    Based on information and belief, Plaintiff alleges that as a direct and foreseeable consequence of the acts of Defendants, and each of them, Plaintiff has been made to suffer loss of equity, economic damages (an inflated income and appraisal would justify a larger loan and correspondingly higher payments), severe emotional distress and damage to her credit rating.

192.    Based on information and belief, Plaintiff alleges that the acts of Defendants have been intentional and committed with a conscious disregard for the consequences of their acts or the damages that the Plaintiff would suffer as a consequence of their actions, and punitive damages are therefore appropriate to punish the acts and to deter such conduct by others.

193.    Based on information and belief, Plaintiff alleges that the misrepresentations and suppression of information by Defendants were made with the intent to induce Plaintiff to act, or not act, in the manner herein alleged in reliance thereon.  Plaintiff alleges that these

representations were concealed from Plaintiff and kept Plaintiff in a constant state of fear for the loss of her home. Plaintiff alleges that Defendants purposefully kept this information from Plaintiff so that they could gain an advantage by holding Plaintiff's foreclosure over her so that she would cooperate with and further Defendants' plans to cause Plaintiff to go further into default, thereby preventing her from obtaining any chance of loan modification.

194. Based on information and belief, Plaintiff alleges that Defendants had knowledge not accessible to Plaintiff that they did not disclose to Plaintiff at the time it was entering into contracts with Plaintiff. These facts included violation of underwriting guidelines and the intent to sell Plaintiff's mortgage above its actual value to investors. Plaintiff alleges that Defendants had knowledge that this scheme would damage Plaintiff.

195. Based on information and belief, Plaintiff alleges that Defendants misled Plaintiff by failing to disclose substantial negative information regarding Defendants' loan products, including the lax underwriting guidelines used by Defendants, the high loan-to-value ratio, the proper disclosures to Plaintiff regarding the high-risk nature of the loan and the Defendants' actual assessment of the risk of default by Plaintiff.

196. Based on information and belief, Plaintiff alleges that as a result of Defendants' fraudulent misrepresentations, Plaintiff reasonably relied upon the deceptions of Defendants and was thereby damaged. Plaintiff alleges that Defendants suppressed material facts relating to the risks to Plaintiff of the loan.

197. Based on information and belief, Plaintiff alleges that the scheme of Defendants has gravely damaged Plaintiff by depriving her of access to equity lines, other mortgages and other financings previously available based upon ownership of the primary Residence and good credit rating.

198. Based on information and belief, Plaintiff alleges that Defendants have continually concealed from Plaintiff the entity who is acting as the master servicer of the trust with an imperfect lien while concurrently demanding and accepting debt service payments from Plaintiff and threatening Plaintiff with foreclosure sale.

199. Based on information and belief, Plaintiff alleges that Defendants knew no reasonable person would knowingly fall into such a trap, so Defendants provided powerful financial incentives to the Defendants' agents and brokers, who then lied and falsified documents in order to collect the commissions provided by Defendants, so that Defendants then could collect their millions of dollars each month.

200. Based on information and belief, Plaintiff alleges that Defendants took unfair advantage of Plaintiff's position and put her in an unfair and grossly oppressive position.

201. Based on information and belief, Plaintiff alleges that Defendants' fraudulent acts and bad faith involves a flagrant, arrogant, and unlawful abuse of the process by which brokers and lenders provide mortgage loans to borrowers. Lehman Brothers, Aurora and Nationstar are involved in a flagrant, arrogant, and unlawful abuse of the loan modification process.

202. Plaintiff is informed, believes, and thereupon alleges that Defendants have continually concealed from Plaintiff the entities which service the loan, who the investor on the loan is, and the true owner of the loan while concurrently demanding and accepting debt service payments from Plaintiff and threatening Plaintiff with the sale of the Residence.

203. Plaintiff is informed, believes, and thereupon alleges that Defendants are currently professing willingness to modify Plaintiff's loan in accordance with state and federal law while they are not authorized to do so, have no intention to do so, and intend only to deprive Plaintiff of her rights.

204.   As a direct and foreseeable consequence of the acts of Defendants, Plaintiff has been caused to suffer economic damages, including, (1) the loss of equity in the property, and (2) the ruination of her credit. In addition, the acts of Defendants are alleged to have been intentional and committed with a conscious disregard for the consequences of the acts or to the damages that Plaintiff may suffer as a consequence of those actions. Punitive damages are, therefore, appropriate to punish such acts and to deter such conduct by others offering such services.

205.   Plaintiff's damages arising from this Cause of Action include (among others) the expenses related to protecting herself, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

### THIRD CAUSE OF ACTION:
### BREACH OF FIDUCIARY DUTY
### (AS AGAINST DEFENDANT LEHMAN BROTHERS)

206.   Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

207.   Plaintiff alleges that Defendant Lehman Brothers acted as a broker and should be treated as such by the Court. Plaintiff alleges that the duty of Defendant Lehman Brothers is fiduciary in nature.

208.·   Defendant Lehman Brothers was acting in the capacity of an agent for the Plaintiff to procure a loan for them. As an agent for the Plaintiff, Defendant owed fiduciary duties to the Plaintiff to make full disclosures of all relevant and material facts upon which they would reasonably be expected to rely, and to refrain from taking a position that was adverse to that of Plaintiff. Defendant also owed Plaintiff a duty of loyalty to refrain from self-dealing and self-promotional conduct that would be detrimental to Plaintiff as its principal. Defendant breached

those duties by failing to disclose illegal and inequitable terms of the subject loan, such as the large increases in the monthly payments, failing to properly qualify the Plaintiff to ensure an ongoing ability to pay the mortgage and not risk a default of the loan, and failing to secure a fixed rate loan and one with an interest rate that was more in line with Plaintiff's credit rating.

209.   As a direct and proximate consequence of the acts and omissions of the Defendant, Plaintiff has been caused to suffer economic losses, including severe emotional distress and monetary losses, all to her detriment and harm.

210.   Under California law, mortgage brokers owe a fiduciary duty to their clients. See Cal. Fin. Code §4979.5(a) ("A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer."). According to the California Supreme Court, mortgage brokers have an obligation to "make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals." *Wyatt v. Union Mortgage Co.*, (1979) 24 Cal. 3d 773, 782. This includes the duty to disclose all material facts that may affect the principal's decision. *Id.* When brokering a loan for borrowers of limited financial experience, mortgage brokers also have "duties of oral disclosure and counseling" with regards to the material terms of the loan. *Id.* at 783-84.

211.   Plaintiff is informed, believes, and thereupon alleges that she has been harmed by Defendant's failure to disclose the true nature of Plaintiff's loan which Defendant had a fiduciary duty to do.

## FOURTH CAUSE OF ACTION:
### QUIET TITLE
### (AS AGAINST ALL DEFENDANTS)

212.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

213.    Plaintiff desires and is entitled to a judicial declaration quieting title in Plaintiff as of the date on which the loan transaction to the securitized Trust was consummated.

214.    Plaintiff is entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of her property and quieting of Plaintiff's title subject only to such legitimate liens and encumbrances as the Court may deem not void, and avoiding any liens or encumbrances upon the property created by Defendants or by their putative predecessors, or by any of them.

## FIFTH CAUSE OF ACTION:
### DECLARATORY RELIEF
### (AS AGAINST ALL DEFENDANTS)

215.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

216.    Plaintiff hereby requests that this Court issue a declaration that the subject loan agreement is void and unenforceable based on a finding by this Court as a question of law; that the loan was void from inception based on illegality, unconscionability and as a violation of express public policy and is unenforceable against the Plaintiff; and to either cancel the contract or to reform the contract to remove the offending terms of the contract.   Plaintiff contends that the subject loan agreement is void and unenforceable for the following reasons:

217.    Illegality: A contract is illegal if it is: "[c]ontrary to an express provision of law; contrary to the policy of express law, though not expressly prohibited; or otherwise contrary to good